IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM R. HAMPE, by and through his mother and guardian Jill Hampe, RICHARD L. WINFREY III, ADAM CALE, OLIVIA WELTER, by and through her parents and guardians John and Tamara Welter, PHILLIP BARRON, by and through his mother and guardian Barbara Baron, JESSICA L. LYTLE, by and through her mother and guardian Judith Lytle, JACOB STRACKA, by and through his parents and guardians David and Nicole Stracka, CHARLES STOUT, individually and on a behalf of a class, <br><br> Plaintiffs <br><br> v. <br><br> JULIE HAMOS, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, <br><br> Defendant. | No. 10 C 3121 <br><br> The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs in this case are medically fragile disabled persons who receive funding from the Illinois Department of Healthcare and Family Services (DHFS or Defendant) under its Medically Fragile/Technology Dependent (MF/TD) Program. The DHFS restricts enrollment in the MF/TD Program to persons under the age of 21, and according to the Plaintiffs, when they age out of the program they transition into a different program that provides substantially less funding. The Plaintiffs allege that without the funding provided by the MF/TD Program, they will have to be institutionalized or hospitalized to provide for their medical needs. The Plaintiffs claim that Defendant's policy violates

1

Title II of the Ameicans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs seek to certify a class of persons similarly situated to themselves to pursue their claims.

I. Background

Medicaid provides medical assistance to both to disabled individuals and to families with dependent children whose income and resources are otherwise insufficient to pay for the cost of the medical care that they require, and is jointly funded by both the federal government and the states that choose to participate. 42 U.S.C. § 1396; 305 ILCS 5/5-1. States that participate in the Medicaid program must submit a plan outlining the services it will provide in its Medicaid program to the United States Secretary of Health and Human Services (HHS). 42 U.S.C. § 1396a. In addition to the services provided for under their Medicaid plans, states may request HHS approval to provide home and community-based services (HCB) to individuals who would otherwise require institutional care. The Secretary has the authority to waive certain Medicaid requirements in order for states to offer such services. 42 U.S.C. § 1396n(b)-(h); 42 C.F.R. § 430.25(d). Specifically, the Secretary may issue waivers to allow a state to provide HCB services only to individuals who would otherwise require institutionalization (rather than to every citizen who is eligible for Medicaid), provided that the average cost per-person of services offered under the waiver authority is cost-neutral (i.e., the average cost of HCB services does not exceed the cost of providing care in an institution). 42 U.S.C.§§ 1396n(c)(1), 1396n(c)(2)(d); 42 C.F.R. § 441.302(e).

Illinois has sought and received a waiver for its Medically Fragile/Technology Dependent Children Program, which provides HCB services and medical equipment to children who would otherwise require institutional care. 89 Ill. Admin. Code § 120.530. Among other requirements, the MF/TD Program requires a determination that recipients would require the level of care provided by a

hospital or skilled nursing facility unless they received HCB services. 89 Ill. Admin Code § 120.530(b). The MF/TD Program provides funding only for persons who are under 21 years of age. 89 Ill. Admin. Code § 120.530(a). After reaching the age of 21, individuals in the MF/TD Program transition to another Medicaid waiver program, the Home Services Program (HSP). 89 Ill. Admin. Code § 676.10. The HSP, however, contains funding caps that restrict the amount of assistance individuals can receive. 89 Ill. Admin. Code § 679.50.

One of the named Plaintiffs, William Hampe, has been diagnosed with reactive airway disease, cerebral palsy, intractable epilepsy, developmental delay, and microcephaly. He requires a ventilatory support system, frequent suctioning of his tracheostomy, and receives his nutrition from a j-tube. Hampe currently receives funding for 16 hours a day of skilled nursing care in his home under the MF/TD Program. Hampe's physician states that without medical home care, Hampe would require inpatient hospitalization, which would separate and isolate him from his mother and community.[1] As Hampe approached his 21st birthday, the Defendant notified him that he would transition to the HSP and would be eligible for $9,429 per month for medical care in his home, under the Program's "exceptional care rate." This funding would allow Hampe to receive approximately one-half the amount of skilled nursing care that he currently receives.

The ADA prohibits discrimination against disabled persons by public entities. 42 U.S.C. § 12132. The regulations implementing the ADA provide that public entities "shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The Rehabilitation Act contains similar anti-discrimination

---

[1] Allegedly, hospitalization would also cost approximately three times as much as the in-home skilled nursing care that Hampe currently receives.

and integration provisions. 29 U.S.C. § 794(a) & 28 C.F.R. § 41.51(d). The Supreme Court has held that these regulations prohibit the "unjustified institutional isolation" of disabled individuals. *Olmstead v. L.C.*, 527 U.S. 581, 599-601, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). In *Olmstead*, the Supreme Court held that public entities must provide community based treatment to qualified individuals with disabilities, provided that the placement can be reasonably accommodated. *Olmstead*, 527 U.S. at 607; *see also* 28 C.F.R. § 35.130(b)(7) (allowing states to resist modifications that entail a fundamental alteration of the States' services and programs). The Plaintiffs' claims flow from the Supreme Court's holding in *Olmstead*.

## II. Class Certification Standard

In order to certify a class action, a court must first find that each element of Fed. R. Civ. P. 23(a) — numerosity, commonality, typicality, and adequacy of representation — is satisfied. Fed. R. Civ. P. 23(a); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Harper v. Sheriff of Cook Cnty*, 581 F.3d 511, 513 (7th Cir. 2009). Once a court finds that the requirements of Rule 23(a) are met, the court must also find that the putative class meets one of the three categories of class actions set forth in Fed. R. Civ. P. 23(b); *Siegel*, 612 F.3d at 935; *Harper*, 581 F.3d at 513. In this case, the Plaintiffs pursue declaratory and injunctive relief and seek certification under Rule 23(b)(2), which permits certification if the defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2); *see also Arreola v. Godinez*, 546 F.3d 788, 797-99 (7th Cir. 2008); *Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008); *Allen v. Int'l Truck and Engine Corp.*, 358 F.3d 469, 470 (7th Cir. 2004).

## III. Analysis

4

*A.     Numerosity*

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all persons is impracticable. Fed. R. Civ. P. 23(a)(1). There is no threshold at which joinder becomes *per se* impracticable. *George v. Kraft Foods Global, Inc.*, No. 08 C 3799, 2010 WL 3386402, at *7 (N.D. Ill. Aug. 25, 2010). Generally, a class of forty plaintiffs is sufficiently numerous for Rule 23(a) purposes. *Id.*; *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969).

The Plaintiffs point to a December 2009 DHFS report that indicates that 504 individuals were enrolled in the MF/TD Program as of September 1, 2009 and 606 individuals received services between July 1, 2007 and June 30, 2008. The report further indicates that 37 individuals aged out of the MF/TD Program between July 2007 and December 2009. The Plaintiffs also point to an affidavit of a DHFS official stating that 34 cases of 18 to 20 year old individuals received services pursuant to the MF/TD Program as of October 2005.[2] Given that the Plaintiffs have put forward evidence to suggest that at two recent points in time, 34-37 individuals would age out of the MF/TD Program in a two-year period and that over 500 individuals receive services pursuant to the MF/TD Program, the Court finds that the class is sufficiently numerous that joinder would be impracticable.

*B.     Commonality*

A common nucleus of operative fact is usually sufficient to satisfy the commonality requirement of Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Where a defendant has engaged

---

[2] The Defendant suggests that it has been "unable to locate" this document in the Plaintiffs' filings. The Defendant also implies that the affidavit is not sufficiently precise. These arguments are curious, given that in their brief the Plaintiffs cite *Jones v. Maram*, 373 Ill. App. 3d 184 (Ill. pp. Ct. 2007) as the source of the affidavit. Defendant submitted the affidavit in *Jones* in support of its arguments in that case. Having relied on the affidavit in prior litigation, Defendant's attempt to call into question both the existence of and the precision of the affidavit is insincere, at best. Defendant does itself no favors in disavowing or impugning such evidence.

in standardized conduct towards members of the proposed class that standardized conduct is sufficient to provide a common nucleus of operative fact. *Id.* Here, Defendant's conduct in limiting participation in the MF/TD Program to individuals under the age of 21 and requiring individuals receiving services under the MF/TD Program to apply for benefits under the HSP when they turn 21 constitutes a "common nucleus of operative fact." The Defendant makes no determination of an individual's medical needs when it finds that an individual is no longer eligible to receive services under the MF/TD Program and instead makes that determination based solely on the fact that the individual has reached the age of 21. The named Plaintiffs may have different medical needs and require different HCB services, but these individual differences are not sufficient to bar class certification. Although the effect of DHFS's conduct on each class member may differ, the allegation that its discriminatory policy or practice affects the class as a hole is sufficient to demonstrate commonality. *See Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). The Plaintiffs' alleged injuries flow from the same discriminatory act — Defendant's limitation of participation in the MF/TD Program to individuals under the age of 21.

The Defendant argues that a threshold statutory issue — whether the prospective class members are qualified individuals within the meaning of the ADA and Rehabilitation Act — poses individualized questions that require individualized fact-finding. In support, DHFS relies primarily on the Third Circuit's holding in *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169 (3rd Cir. 2009). *Hohider* reasons that because the statutory language of the ADA limits the protection of the statute to "qualified individuals" that a court must ensure that class members are in fact qualified prior to a classwide determination that the defendant engaged in discriminatory conduct.

Defendant's argument is a red herring. The Defendant is correct that the ADA prohibits discrimination only against qualified individuals with disabilities. Putting aside the question of whether

*Hohider*'s reasoning is persuasive, the Court is not convinced that even if the court were to conduct an individualized inquiry into whether class members were qualified individuals that such an inquiry would "negate the very benefits Rule 23" confers. Def. Resp. at 13.[3]

The statute defines qualified individuals as disabled individuals who "with or without reasonable modifications to rules, policies, or practices . . . mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The proposed class definition, however, includes only persons who are receiving or have or will receive services under the MF/TD Program. In that sense, the prospective class members' receipt of services under the MF/TD Program demonstrates that he or she meets the essential eligibility requirements for the receipt of services or participation in the MF/TD Program because to participate in the MF/TD Program the Defendant must determine that recipients would require the level of care provided by a hospital or skilled nursing facility unless they received HCB services. *See Radaszewski v. Maram*, 383 F.3d 599, 612-613 (7th Cir. 2004) (discussing whether similar disabled individual was a "qualified individual"). Because the Defendant has already made a threshold determination that the prospective class members are qualified to receive services under the MF/TD Program and because the Defendant's decision to exclude the prospective class members from that Program is based not on a change in their medical condition but on a change in their age, the Court concludes that any inquiry into whether the class members are "qualified individuals" is likely to be minimally taxing.

---

[3] In this vein, much of Defendant's argument seems to suggest that it argues that although there are common issues, they do not predominate. Indeed, Defendant earlier argues that "claiming that an issue predominates does not make it so." Def. Resp. at 13. Of course, whether the common issues predominate over individualized issues is a question for plaintiffs who seek certification under Fed. R. Civ. P. 23(b)(3) and not those who seek certification under 23(b)(2).

Common questions — for example, whether Defendant's policy of transitioning individuals from the MF/TD Program to the HSP and thereby reducing their medicaid benefits violates the ADA, or whether requiring the Defendant to allow individuals in the MF/TD to continue to receive the same level of benefits after their 21st birthday that they received prior to their 21st birthday is a reasonable accommodation — clearly exist. The Court therefore finds that there are common issues of law and fact.

C. *Typicality*

The question of typicality is closely related to the question of commonality. *Rosario*, 963 F.2d at 1018. Typicality can be satisfied even where there are factual distinctions between the named plaintiff's claim and the claims of other class members. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). The requirement directs the court to focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large. *Id.* A claim is typical "'if it arises from the same event or practice or course of conduct'" that gives rise to the other class members' claims. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting H. Newberg, CLASS ACTIONS § 1115(b) at 185 (1977)). Here, Hampe's claims are typical of those of the class — he receives HCB services under the MF/TD Program and when he turns 21, the DHFS will boot him from that Program and transition him to the HSP, which in turn, will result in a reduction of his funding for HCB services. The proposed class includes other individuals who will receive, are receiving or have received services under the MF/TD Program who will be subject to a reduction in Medicaid funding once they reach the age of 21. The Defendant raises the same red herring it raises in response to the Plaintiffs' argument on commonality, which remain unconvincing. The Court finds that Hampe's claims are typical of the claims of the proposed class.

D. *Adequacy of Representation*

Courts make a two-part inquiry into the adequacy of representation for the purposes of class certification. First, courts examine whether the class representative can fairly and adequately protect the interests of the class. Second, courts ask whether counsel is able to prosecute the action. *Retired Chicago Police Ass'n*, 7 F.3d at 598. A named representative cannot fairly and adequately protect the interests of the class if he has interests antagonistic to that class or if he lacks a sufficient interest in the outcome of the litigation. *Id.*

Defendant raises an argument bordering on frivolous. Defendant suggests that because some members of the prospective class lack standing, have moot claims, have time-barred claims, or are not "qualified individuals" that Hampe's interests are antagonistic to the class.[4] Even if the Court were to accept the Defendant's underlying premises (which as noted below it does not), it does not follow that Hampe's interests are antagonistic to prospective class members who lack standing or had mooted or time-barred claims. Hampe's injury arises from the same the same alleged violation of federal law as the other proposed class members and he clearly has an interest in obtaining the injunctive relief. Defendant makes no argument that counsel is not qualified to prosecute the interest of the class. The

---

[4] Most of Defendant's underlying premise is itself without merit. Defendant suggests that some plaintiff's claims may be moot because they accepted funding under the HSP. But merely because an individual has submitted to the allegedly discriminatory conduct does not undo that discrimination. An employer who demoted an employee because of his race or gender could not argue that the employee's discrimination claim was "moot" because the employee accepted the demotion rather than quit. Defendant also suggests that some plaintiffs lack standing because their claims are not yet ripe because they are not nearing their 21st birthday. But that does not make the injury abstract or hypothetical. Individuals in the MF/TD Program face an inexorable march towards transition and exclusion from that Program. Defendants further suggest that some prospective class members claims are time-barred because they have already aged out of the MF/TD Program. Because the prospective class members' exclusion from the MF/TD Program is ongoing, their claims would not be time-barred. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

Court finds that Hampe is an adequate class representative and that counsel can adequately protect the interests of the class.

E.     Rule 23(b)(2)

Plaintiffs seek certification under Fed R. Civ. P. 23(b)(2), which requires that "plaintiffs... need merely show that defendants acted on grounds generally applicable to the class for which they seek declaratory and injunctive relief." Fed. R. Civ. P. 23(b)(2); *Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010). Although certification under Rule 23(b)(2) is not automatic merely because the plaintiffs seek only declaratory and injunctive relief, it is an appropriate device to remedy a state policy that treats the prospective class uniformly and presents common questions of law and fact. *See, e.g. Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897-99 (7th Cir. 1999) (discussing the use of Rule 23(b)(2) class actions to prosecute Title VII claims before Title VII allowed compensatory and punitive damages); *Bishop v. Gainer*, 272 F.3d 1009 (7th Cir. 2001) (involving 23(b)(2) class seeking declaratory and injunctive relief concerning Illinois State Police hiring practices). Defendants make no real argument that certification is not appropriate under Rule 23(b)(2), instead suggesting merely that it is not automatic.

Here, the proposed class seeks only declaratory and injunctive relief concerning Defendant's policy of transitioning individuals receiving services in the MF/TD Program to the HSP when they reach the age of 21. The Defendant's conduct towards the entire proposed class is identical — individuals age-out of the MF/TD Program regardless of their medical needs and instead based solely on their age. Moreover, Defendant has refused to modify this policy and practice despite the fact that other individual plaintiffs have successfully challenged the policy in five separate lawsuits. Certification of the proposed class advances the Court's interest in judicial economy because it avoids the strain of repetitive,

identical lawsuits, thus economizing the expense of litigation over the common issue of whether Defendant's policy to transition individuals from the MF/TD Program to the HSP at the age of 21 violates the ADA and the Rehabilitation Act.

The Court finds that the proposed class satisfies the requirements of Rule 23(b)(2).

F.  *Adequacy of the Class Definition*

Finally, Defendant raises arguments that the proposed class is vague and indefinite. The Court has disposed of many of Defendant's arguments in its analysis of the Rule 23 requirements, and need not repeat that analysis. With regard to any remaining arguments, the Defendant raised similar arguments in *Colbert v. Blagojevich*, No. 07 C 4737, 2008 WL 4442597, at **2-4 (N.D. Ill. Sep. 29, 2008). *Colbert* rejected those arguments, and the Court finds that reasoning persuasive and adopts it here.

Accordingly, for the foregoing reasons, the Court GRANTS the Plaintiffs' Motion to Certify a Class and certifies a class as follows:

> All persons who are enrolled or will be enrolled or were enrolled in the State of Illinois' Medically Fragile, Technology Dependent Medicaid Waiver Program (MF/TD) and when they obtain the age of 21 years are subjected to reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years.

IT IS SO ORDERED.

11/22/10
Dated

Hon. William J. Hibbler
U.S. District Court