

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM R. HAMPE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 10 C 3121 |
| | ) | |
| JULIE HAMOS, Director, Illinois | ) | Judge Ruben Castillo |
| Department of Healthcare and Family | ) | |
| Services, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Eight medically fragile disabled individuals currently receive funding from the Illinois Department of Healthcare and Family Services ("DHFS") for approximately 16 hours a day of in-home skilled nursing services. These services allow the disabled individuals, Plaintiffs in this case, to avoid constant hospitalization. As of their twenty-first birthdays, Plaintiffs have faced a significant reduction in funding for those services. Accordingly, William R. Hampe, by and through his mother/guardian, Jill Hampe; Richard L. Winfrey, III; Adam Cale; Olivia Welter, by and through her parents/guardians, John and Tamara Welter; Phillip Baron, by and through his mother/guardian, Barbara Baron; Jessica L. Lytle, by and through her grandmother/guardian Judith A. Lytle; Jacob Stracka, by and through his parents/guardians, David and Nicole Stracka; and Charles Stout bring this class action on behalf of themselves and all other similarly situated individuals (collectively, "Plaintiffs") against Julie Hamos ("Defendant") in her official capacity as Director of DHFS. (R. 54, Third Am. Compl.) Plaintiffs allege that Defendant's policies and practices violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section

1

504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Plaintiffs seek declaratory and injunctive relief. (R. 54, Third Am. Compl. at 54-55.) Both parties have moved for summary judgment, each claiming that it is entitled to judgment as a matter of law. (R. 171, Pls.' Mot.; R. 191, Def.'s Mot.) Presently before the Court are these cross-motions for summary judgment. For the reasons set forth herein, both motions are denied.

**RELEVANT FACTS[1]**

This case proceeds on behalf of a certified class comprised of:

> All persons who are enrolled or will be enrolled or were enrolled in the State of Illinois' Medically Fragile, Technology Dependent Medicaid Waiver Program (MF/TD) and when they obtain the age of 21 years are subjected to reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years.

(R. 75, Mem. Op. at 11.) Plaintiff Jessica Lytle is not a class member because she was not enrolled in Illinois' MF/TD waiver prior to turning twenty-one years of age. (Def.'s Resp. to Pls.' Facts ¶ 5.) Lytle received funding for levels of in-home skilled nursing services similar to those received by the class members through the Illinois Department of Children and Family Services as adoption assistance because she was adopted by her grandmother. (R. 173, Pls.' L.R. 56.1 Materials, Ex. 7 ¶ 5.)

I. **Medicaid**

---

[1] The Court takes its facts from Plaintiffs' Local Rule 56.1 Statement of Material Facts ("Pls.' Facts"), Defendant's Local Rule 56.1 Response ("Def.'s Resp. to Pls.' Facts") and Statement of Additional Facts ("Def.'s Add'l Facts"), and Plaintiffs' Response to Defendant's Statement of Additional Facts ("Pls.' Resp. to Def.'s Facts"). Defendant's material facts in support of her motion for summary judgment are identical to her Additional Facts, and Plaintiffs' response to Defendant's material facts is identical to their Response to Defendant's Additional Facts. Thus, for the sake of clarity, the Court will only cite to the set of facts surrounding Plaintiffs' motion.

Medicaid is a joint federal- and state-funded program that provides necessary medical assistance to disabled individuals whose income and resources are insufficient to meet the cost of the medical care they require. *See* 42 U.S.C. § 1396; 305 Ill. Comp. Stat. 5/5-1. States that opt to participate in Medicaid must operate the program in conformity with federal statutory and regulatory requirements and must submit a Medicaid plan to the Department of Health and Human Services ("HHS") for approval. 42 U.S.C. §§ 1396, 1396a. In Illinois, DHFS is the state agency responsible for operating Medicaid. 305 Ill. Comp. Stat. 5/2-12(4); (Def.'s Resp. to Pls.' Facts ¶ 70). Illinois pays Medicaid-enrolled providers for all mandatory Medicaid services provided to eligible persons, but not for all optional services. (Pls.' Resp. to Def.'s Add'l Facts ¶¶ 141-42.) Mandatory Medicaid services are those that Congress requires participating states to provide; these services include, among others, medically necessary hospitalizations, inpatient hospital services, physician services, long-term care (nursing facility) for individuals over twenty-one years of age, and Early and Periodic Screening, Detection and Treatment ("EPSDT") services. 42 C.F.R. § 440.1 *et seq.*; (Pls.' Resp. to Def.'s Add'l Facts ¶ 140; Ex. A to Pls.' Resp to Def.'s Add'l Facts at 29). Medicaid-eligible admissions to pediatric hospitals are reimbursed on a per diem basis in Illinois. Ill. Admin. Code tit. 89, §§ 148.250-148.300. Medicaid-eligible admissions to general hospitals are reimbursed at a diagnosis-related group rate. Ill. Admin. Code tit. 89, § 149.50.

HHS grants Home and Community-Based Services ("HCBS") waivers that allow a state to provide services not otherwise covered by the state's Medicaid plan as an alternative to institutionalizing individuals within a target group. 42 U.S.C. § 1396n(c)(1). Illinois has implemented a total of nine HCBS waivers, including the MF/TD waiver and the Persons with

Disabilities waiver in the Home Services Program ("HSP"). (Def.'s Resp. to Pls.' Facts ¶ 74.)

## A. Services for children

EPSDT services are designed to serve as Medicaid's well child program and provide regular screenings, immunizations, and primary care services. 42 U.S.C. § 1396d(r); Ill. Admin. Code tit. 89, § 140.485. Individuals over the age of twenty-one are not eligible for EPSDT services. 42 U.S.C. § 1396d(a)(4)(B). Through EPSDT, Congress requires states to provide payment for any medically necessary service, including optional services, to Medicaid-eligible children under the age of twenty-one. (Def.'s Resp. to Pls.' Facts ¶ 82.) When an EPSDT screening detects a problem, Medicaid-eligible children receive coverage for all services necessary to "correct or ameliorate" the problem, "whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). Any limitations that Illinois' Medicaid Plan imposes upon certain services do not apply to individuals who receive services through EPSDT. *Id.*

HCBS waivers, such as the MF/TD waiver, may supplement, but may not supplant, EPSDT services. Ill. Admin. Code tit. 89, § 120.530(d). The MF/TD waiver serves children under the age of twenty-one by providing in-home services to allow the recipients to avoid institutional placements. 305 Ill. Comp. Stat. 5/5-2.05; Ill. Admin. Code tit. 89, § 120.530(b). The MF/TD waiver is designed to serve children who require a hospital level of care or a skilled nursing home level of care. Ill. Admin. Code tit. 89, § 120.530(b). Services that are available only under the MF/TD waiver include respite care, environmental modifications, special medical supplies and equipment, medically supervised day care, family and nurse training, and placement maintenance counseling. Ill. Admin. Code tit. 89, § 120.530(d). Children participating in the

4

MF/TD waiver also receive other covered Medicaid services, such as hospital care, medical equipment and supplies, and skilled and private duty nursing services. *Id.*; Ill. Admin. Code tit. 89, § 140.3(b). Skilled nursing is the primary service received by MF/TD waiver participants, although it is covered by EPSDT rather than the MF/TD waiver. (Def.'s Resp. to Pls.' Facts ¶ 81; Pls.' Resp. to Def.'s Add'l Facts at ¶¶ 154-55.) Skilled nursing is an optional service that Illinois' Medicaid Plan does not provide for adults but is required to provide for children as an EPSDT service. *See* Ill. Admin. Code tit. 89, §§ 140.3(c), 140.485.

The MF/TD waiver is managed by DHFS, and DHFS nurses and physicians make all eligibility determinations. Ill. Admin. Code tit. 89, § 120.530(e). Participants' care plans are developed by DHFS and the University of Illinois, Division of Specialized Care for Children ("DSCC") with input from their attending physicians to ensure that participants may be cared for safely in the home within the individual cost limit. Ill. Admin. Code tit. 89, § 120.530(f). DSCC is responsible for the day-to-day operations of the MF/TD waiver. Ill. Admin. Code tit. 89, § 120.530(c). DHFS has the final review and approval of all care plans. Ill. Admin. Code tit. 89, § 120.530(f).

The MF/TD waiver has the capacity for 700 children, and it served 627 children in fiscal year 2010. (Def.'s Resp. to Pls.' Facts ¶ 2.) Between January 1, 2010, and December 31, 2013, 51 participants will turn twenty-one years old and therefore "age out" of the waiver. (*Id.* ¶ 4.) When participants age out, their options for continued long-term, Medicaid-funded care are either HSP services or nursing home facilities. (*Id.* ¶ 54.) Most participants in the MF/TD waiver transition into the Persons with Disabilities waiver, part of the HSP, once they turn twenty-one. (*Id.* ¶ 105.)

5

## B.    Services for adults

Private duty nursing is an optional service that states may choose to cover or not in their Medicaid plan. 42 U.S.C. §§ 1396a(10)(A), 1396d(a). Illinois' Medicaid Plan does not cover private duty nursing. (Pls.' Resp. to Def.'s Add'l Facts ¶ 143); see Ill. Admin. Code tit. 89, § 140.3(c). The HSP is "a State and federally funded program designed to allow Illinois residents, who are at risk of unnecessary or premature institutionalization, to receive necessary care and services in their homes, as opposed to being placed in an institution." Ill. Admin. Code tit. 89, § 676.30(j). Waivers under the HSP provide funding based on the cost of a nursing home level of care for adults with physical disabilities. Ill. Admin. Code tit. 89, § 679.50. An applicant to the HSP is assigned a Determination of Need ("DON") score based on his impairment and need for care. Ill. Admin. Code tit. 89, § 676.30(d). The DON assessment "is made to determine whether or not the individual is at imminent risk of institutionalization, and therefore eligible for placement in a hospital/nursing facility and/or services through HSP." Ill. Admin. Code tit. 89, § 691.10(a). The HSP provides services such as personal assistants, adult day care, homemaker services, skilled professional nursing, certified nursing assistants, in-home therapy, home-delivered meals, emergency home response, special medical equipment and supplies, environmental modifications, and respite services. Ill. Admin. Code tit. 89, § 676.40.

HSP services are only limited by their cost, as HSP participants cannot receive services that exceed the fixed cost cap, the Service Cost Maximum ("SCM"), assigned to them. Ill. Admin. Code tit. 89, § 679.50(a). The SCM "directly corresponds to the amount the State would expect to pay for the nursing care component of institutionalization if the individual chose institutionalization" and is determined by a recipient's DON score. Id.; Ill. Admin. Code tit. 89,

6

§ 679.10(b). Individuals with "complex medical needs that cannot be served within the allowable SCM" are funded at the Exceptional Care Rate determined by DHFS. Ill. Admin. Code tit. 89, § 679.50(f). The Exceptional Care Rate is based on a nursing home level of care rather than a hospital level of care, and it is comparable to the assessed cost of nursing facility care that a person with similar needs would require. *Id.*; Ill. Admin. Code tit. 89, § 140.569(a).

## II.   Plaintiffs

Plaintiffs are Medicaid recipients. (Def.'s Resp. to Pls.' Facts ¶ 30.) They were enrolled in the MF/TD waiver until their twenty-first birthdays. (*Id.* ¶ 31.) Defendant approved funding for significant hours of in-home skilled nursing services prior to their turning twenty-one; at minimum, she approved 112 hours each week plus an additional 168 hours each year of respite care. (*Id.* ¶ 33.) Plaintiffs chose to receive home and community-based services rather than be institutionalized. (*Id.* ¶¶ 25, 27, 29.) Plaintiffs' medical conditions did not improve when they turned twenty-one. (*Id.* ¶ 64.) Plaintiffs wish to continue to receive home- and community-based services rather than be institutionalized after their twenty-first birthdays. (*Id.* ¶¶ 26, 28, 29.)

Defendant's physicians determined that Plaintiffs required a hospital level of care, and Defendant found that the "Alternative Place" for Plaintiffs was a hospital. (*Id.* ¶¶ 34, 36.) Plaintiffs' physicians state that Plaintiffs need a skilled nursing level of care. (*Id.* ¶ 64.) It is disputed whether the only alternative to the home-based services for Plaintiffs is long-term hospitalization. (*Id.* ¶¶ 34-45.) Defendant does not dispute that DHFS physicians found that the alternative to home-based services for Plaintiffs was hospitalization, but argues that those determinations are immaterial to the present issue because they were made under the MF/TD waiver, which only applies to children under the age of twenty-one. (*Id.* ¶¶ 34-38.) DSCC also

determined that Plaintiffs' alternative level of care was hospitalization, but Defendant argues that the DSCC's determination is immaterial to the present issue because Plaintiffs have attained the age of twenty-one and are thus ineligible for the MF/TD waiver and EPSDT services. (*Id.* ¶ 47.) Defendant also alleges that similar, individual findings by Plaintiffs' treating physicians are conclusory, foundationless, and speculative. (*Id.* ¶¶ 39-45.)

Plainitffs' medical needs cannot be met in nursing homes because "the number of patients that are assigned to a nurse would not provide the Plaintiffs the proper level of intensity of skilled nursing which they require." (Pls.' Facts ¶¶ 65-A, 65-B.) Defendant disputes this fact, but offers no record evidence to refute it.[2] (Def.'s Resp. to Pls.' Facts ¶¶ 65-A, 65-B.) Plaintiffs contend that the Exceptional Care Rate is not sufficient to cover the costs of the in-home skilled nursing services that Plaintiffs received under the MF/TD waiver and that they need to avoid hospitalization. (Pls.' Facts ¶ 63.) Defendant argues that because Plaintiffs do not specify what conditions would cause them to be admitted to the hospital or what hospital they would be admitted to, the allegation is speculative. (Def.'s Resp. to Pls.' Facts ¶ 63.) The costs DHFS had estimated for institutional care for Plaintiffs were more than twice as much as the costs of providing skilled nursing services in-home. (*Id.* ¶ 48.) The maximum level of reimbursement under Exceptional Care Rate is "a bit less than half of what the children are receiving through [the] MF/TD [waiver]." (*Id.* ¶¶ 54, 57, 58.) Thus, Plaintiffs claim that "Defendant does not

---

[2] In support of Defendant's dispute of Plaintiffs' Facts ¶¶ 65-A and 65-B, she cites to No. 39 in her Exhibit A, which is Plaintiffs' Response to Defendant's First Requests to Admit. Defendant's Exhibit A, however, does not include No. 39 of that document. The Court thus regards Defendant's response as lacking any evidentiary basis and deems Plaintiffs' Facts ¶¶ 65-A and 65-B undisputed. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000); *see F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005).

permit [them] to maintain the same level of Medicaid nursing care services" once they reach the age of twenty-one. (Pls.' Facts ¶ 55.) Defendant avers that as a matter of federal law, Plaintiffs no longer qualify for EPSDT services, including private duty nursing, once they turn twenty-one. (Def.'s Resp. to Pls.' Facts ¶ 55.)

Plaintiffs claim that the costs for their continued care at home "would not exceed the anticipated cost of care for them in an institutional setting at the hospital level of care," and that "[t]he cost of providing skilled nursing services to the Plaintiffs is less than the cost of serving them in a hospital." (Pls.' Facts ¶¶ 51, 53.) Defendant disputes these facts because, as Plaintiffs have attained the age of twenty-one, they "no longer qualify for the MF/TD Waiver, EPSDT services, admission to a pediatric hospital or payment of Medicaid eligible pediatric in-patient hospital admissions at a [per]-diem amount." (Def.'s Resp. to Pls.' Facts ¶¶ 51, 53.) Plaintiffs argue that the Exceptional Care Rates that have been established for them are insufficient to cover in-home nursing. (Pls.' Facts ¶ 57-63.) Defendant disputes this contention, repeating her allegations that Plaintiffs' doctors statements are conclusory and baseless, and pointing out that DHS has set an Exceptional Care Rate for only some of the named Plaintiffs. (Def.'s Resp. to Pls.' Facts ¶ 57-63.)

## PROCEDURAL HISTORY

Plaintiff William R. Hampe filed his initial complaint (R. 1) on May 20, 2010. On May 23, 2010, he moved for a temporary restraining order and a preliminary injunction (R. 4), which were granted on May 28, 2010 (R. 11, Order). On June 2, 2010, Hampe moved to certify a class. (R. 12, Pl.'s Mot.) The United States filed a statement of interest (R. 26) on July 16, 2010. Throughout the next few months, additional plaintiffs joined the suit and obtained temporary

restraining orders and preliminary injunctions. (R. 33, Winfrey Order; R. 49, Cale Order; R. 58, Welter Order; R. 83, Lytle Order; R. 85, Baron Order; R. 87, Stracka Order.) Plaintiffs filed their third amended complaint on October 28, 2010. (R. 54, Third Am. Compl.) In Count I, Plaintiffs allege that "Defendant's planned reduced funding or actual reduced funding of the home nursing and other services which the Plaintiffs needs [*sic*]" constitutes unlawful discrimination of individuals with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12132. (*Id.* ¶¶ 211-15.) In Count II, Plaintiffs allege that the reduced funding constitutes unlawful discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794(a), and that the reduced funding will force the Plaintiffs "into an institution" in violation of the regulations implementing the Rehabilitation Act, 28 C.F.R. § 41.51(d). (*Id.* ¶¶ 220-24.) Plaintiffs seek declaratory and injunctive relief. (R. 54, Third Am. Compl. at 54-55.)

Hampe's motion to certify a class was granted on November 11, 2010. (R. 75, Mem. & Order.) Defendant filed her amended affirmative defenses and answer to the amended complaint (R. 102) on December 21, 2010. On January 23, 2012, Plaintiffs moved to reassign and consolidate with this case *Chad White-Smith v. Hamos*, No. 12 C 41, (R. 120), another case being litigated in this district. The motion to reassign and consolidate was granted on May 15, 2012. (R. 153, Min. Entry.) On August 23, 2012, Plaintiffs moved for summary judgment (R. 171). On October 10, 2012, Defendant filed her response to Plaintiffs' motion for summary judgment (R. 190) in addition to her own motion for summary judgment (R. 191). Plaintiffs filed their reply and response on October 14 (R. 197), and Defendant replied on October 25 (R. 200). The cross-motions for summary judgment are presently before the Court.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court does not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter; instead, the Court must ascertain whether there exists a genuine issue of triable fact. *Id.* at 249-50. Accordingly, the nonmovant must "come forward with specific facts showing that there is a *genuine issue for trial.*" *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment is not appropriate if there are disputed issues of material fact remaining, or if the Court must make "a choice of inferences" arising from undisputed facts. *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003). In deciding a motion for summary judgment, the Court must construe all facts in the light most favorable to the nonmovant and draw all reasonable and justifiable inferences in her favor. *Anderson*, 477 U.S. at 255; *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). When both parties seek summary judgment, the Court "look[s] to the burden of proof that each party would bear on an issue of trial; [the Court] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324).

On summary judgment, the Court limits its analysis of the facts to the evidence that is

presented in the parties' Local Rule 56.1 statements. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Parties' statements of material facts must be "amply supported by citations to the relevant record evidence." *Bay Area Bus. Council*, 423 F.3d at 634. When a proposed statement of fact is supported by the record and not adequately controverted by the opposing party, the Court will accept that statement as true. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). To adequately dispute a statement of fact, the opposing party must cite specific support in the record; an unsubstantiated denial or a denial that is mere argument or conjecture is not sufficient to create a genuinely disputed issue of material fact. *Id.*; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). These same Rule 56 standards apply to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

## DISCUSSION

Plaintiffs allege that DHFS's "planned reduced funding or actual reduced funding of the home nursing and other services which the Plaintiffs need in order to avoid institutionalization" constitutes unlawful discrimination in violation of the ADA, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a). (R. 54, Third Am. Compl. ¶¶ 214, 215, 222, 223.)

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the statute, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications . . . meets the

12

essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Similarly, Section 504 of the Rehabilitation Act, which applies to programs receiving federal financial assistance, states in relevant part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794. "In view of the similarities between the relevant provisions of the ADA and the [RA]," courts are instructed to "construe and apply them in a consistent manner." *Radaszewski ex rel. Radaszewski v. Maram* (*Radaszewski I*), 383 F.3d 599, 607 (7th Cir. 2004). Thus, the Court's analysis of Plaintiffs' ADA claim applies with equal force to their Rehabilitation Act claim.

Certain elements of Plaintiffs' ADA claim are undisputed. It is undisputed that Plaintiffs are individuals with disabilities, though the parties disagree as to whether Plaintiffs are "qualified" for the services they seek. Additionally, the parties agree that DHFS is a "public entity" for purposes of Title II of the ADA and a recipient of federal funds subject to the Rehabilitation Act. (R. 54, Third Am. Compl. ¶¶ 213, 221; R. 102, Def.'s Am. Aff. Defenses & Answer ¶¶ 213, 221.) Thus, DHFS is subject to the two statutes and their implementing regulations. Two critical issues, however, are disputed: (1) whether Plaintiffs are eligible for the services they seek and thus can be considered qualified individuals with disabilities; and (2) whether Defendant discriminated against Plaintiffs on the basis of their disabilities. The Court will address each in turn.

I. **Whether Plaintiffs are qualified individuals with disabilities**

13

It is undisputed that Plaintiffs are Medicaid recipients and that they met the eligibility requirements for community-based services, and received such services through the MF/TD waiver, prior to their twenty-first birthdays. (Pls.' Facts ¶¶ 30, 33, 34.) The parties dispute whether Plaintiffs are qualified individuals with disabilities and the eligibility requirements that Plaintiffs must meet to be considered qualified individuals with disabilities within the meaning of the ADA.

Plaintiffs seem to broadly argue that they are qualified individuals with disabilities within the meaning of Title II because they are eligible for Illinois' Medicaid program. (*See* R. 176, Pls.' Mem. at 8-9.) Plaintiffs allege that any individual who was previously a participant in the MF/TD waiver is a qualified individual with a disability. (*Id.* at 8) (quoting *Radaszewski I*, 383 F.3d at 613-14). Plaintiffs base their argument only on their allegation that "every District Court in the State of Illinois has found that a person previously enrolled in the MF/TD [waiver] has been found to be an 'individual with a disability' without any difficulty." (*Id.* at 8-9) (citing *Radaszewski I*, 383 F.3d at 613-14; *Grooms v. Maram*, 563 F. Supp. 2d 840, 850-51 (N.D. Ill. 2008); *Radaszewski ex rel. Radaszewski v. Maram (Radaszewski II)*, No. 01 C 9551, 2008 WL 2097382, at *38-*39 (N.D. Ill. Mar. 26, 2008); *Sidell v. Maram*, No. 05-1001, 2007 WL 5396285, at *26 (C.D. Ill. May 14, 2007)). Plaintiffs fail to provide any law or analysis in support of their argument.

Purportedly in response, Defendant argues that Plaintiffs are not qualified within the meaning of the ADA because they do not meet the eligibility requirements of EPSDT. (R. 193, Def.'s Resp. to Pls.' Mem. at 3-11.) Defendant argues that EPSDT is a Medicaid provision pursuant to which Congress requires states to make certain health services available to children,

14

and that the age limit is an essential eligibility requirement for EPSDT services. (*Id.* at 4-5.) Defendant contends that because Plaintiffs have already turned twenty-one, they cannot meet the eligibility requirements for EPSDT without modification and that raising the age limit is not a reasonable modification. (*Id.* at 8.) Defendant does not address whether Plaintiffs are eligible to receive services through the PWD waiver except to assert that this Court "cannot give Plaintiffs the type and quantity of services they received as children, *i.e.*, private duty nursing, by calling it a 'reasonable modification' to some other Medicaid-funded program." (*Id.* at 10.)

Plaintiffs reply by repeating their original arguments nearly verbatim. (R. 197, Pls.' Reply to Def.'s Resp. at 9-10.) Plaintiffs then attack Defendant's arguments as to whether their proposed modifications are reasonable without addressing her allegations that they are not eligible to receive the services they seek. (*Id.* at 10-12.) Plaintiffs rely heavily on *Radaszewski I*, *Radaszewski II*, *Grooms*, and *Sidell* to support their argument that the modifications they seek are reasonable, and they allege that *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999), "set out an unequivocal application of the integration mandate for forced institutionalization cases." (*Id.* at 10-11.)

First, the Court must address the disagreement as to what program or waiver Plaintiffs must be eligible for in order to be qualified individuals with disabilities within the meaning of Title II of the ADA. The Court rejects Plaintiffs' apparent position that they must only be eligible for Medicaid to be deemed qualified individuals with disabilities because Plaintiffs seek specific services, namely, skilled private-duty nursing, that are not offered to all Medicaid recipients. It is undisputed that Plaintiffs require a hospital level of care. (Pls.' Facts ¶ 36, 64; Def.'s Resp. to Pls.' Facts at 22, 37.) In order to avoid institutionalization as adults, as is the

15

goal of the HSP, Plaintiffs each require over 112 hours of skilled nursing per week. (*See, e.g.*, R. 173-6, Pls.' Local Rule 56.1 Materials, Ex. 38, Decl. of Dr. Keith Veselik, ¶¶ 4-5; R. 173-6, Pls.' Local Rule 56.1 Materials, Ex. 39, Decl. of Dr. Gregory K. Milani, ¶¶ 4-5; R. 173-6, Pls.' Local Rule 56.1 Materials, Ex. 40, Decl. of Dr. David L. Miller, ¶¶ 4-5); *see also Radaszewski I*, 383 F.3d at 611-12 ("[T]he purpose of a waiver program like HSP is to enable medically needy individuals to avoid institutionalization by making services available to them that are otherwise not part of the State's basic Medicaid program."). Based on these facts, the Court concludes that Plaintiffs must prove their eligibility for either the MF/TD waiver or the HSP to be qualified individuals with disabilities who may sue Defendant pursuant to the ADA.

In *Radaszewski I*, the Seventh Circuit addressed whether the plaintiff, who was very similarly situated to Plaintiffs here, was a qualified individual with a disability within the meaning of the ADA and found it undisputed that he was "qualified for the receipt of home services *through the HSP*" in the sense that he was eligible for Medicaid and at risk of institutionalization. 383 F.3d at 612 (emphasis added); *see also Olmstead*, 527 U.S. at 602 (discerning whether plaintiffs met the essential eligibility requirements "for habilitation in a community-based program"). The Seventh Circuit looked to the Illinois Administrative Code to determine whether the plaintiff met the statutory HSP eligibility requirements. *Radaszewski I*, 383 F.3d at 612-13 (citing Ill. Admin Code. tit. 89, § 682.100). Because the Seventh Circuit was reversing a grant of summary judgment in favor of the defendant, it assumed that the plaintiff would be able to prove on remand his assertions that he met the specific elements of HSP eligibility, such as cost-neutrality. *Radaszewski I*, 383 F.3d at 613.

To establish their eligibility under the HSP, Plaintiffs must prove the following: (a) they

16

are citizens of the United States; (b) they are Medicaid recipients; (c) they are Illinois residents; (d) they are under the age of sixty; (e) they have severe, lifelong disabilities; (f) they are in need of long-term care as indicated by their DON scores; (g) their physicians certify that they are in need of long-term care that can safely and adequately be provided in their homes; and (h) their in-home care is cost-neutral as compared to institutional care for an individual with a similar DON score. Ill. Admin. Code. tit. 89, § 682.100. Eligibility requirements (a)-(e) and (g) are easily met. With respect to subsection (f), Plaintiffs never disclose their DON scores or allege that their DON scores indicate that they are in need of long-term care. Nevertheless, the Court concludes, based on the totality of the undisputed facts and drawing all reasonable inferences in favor of Defendant, that Defendant cannot plausibly dispute that Plaintiffs meet the eligibility requirement of subsection (f).

With respect to subsection (h), Plaintiffs argue that providing them in-home nursing services costs Illinois less than their hospitalizations would. (R. 176, Pls.' Mem. at 10.) In support of this proposition, Plaintiffs cite the hours of in-home nursing care DHFS approved for them under the MF/TD waiver and the Defendant's estimated costs of institutional care versus home care. (Pls.' Facts ¶¶ 33, 48.) Defendant does not dispute that DHFS found in-home care to be more cost-effective than institutional care under the MF/TD waiver, but argues that those figures are irrelevant because Plaintiffs are no longer covered by the MF/TD waiver. (Def.'s Resp. to Pls.' Facts at 33.) It is undisputed that under Medicaid, pediatric hospital stays are reimbursed on a per-diem basis, while general hospital stays are reimbursed at a "diagnosis related grouping rate." (Def.'s Add'l Facts ¶¶ 156, 158.) This disparity may constitute a significant difference in cost, or it may not. Neither party provides the Court with information

about the relative costs of the per-diem reimbursement for pediatric hospital stays and the diagnosis related grouping rate reimbursement for general hospital stays. Without this evidence, the Court is unable to determine whether Plaintiffs meet the eligibility requirements for HSP. *See Radaszewski I*, 383 F.3d at 613-614 (finding the question of relative costs critical to any final decision).

As in *Radaszewski I*, Defendant here has not alleged facts sufficient to establish that she is entitled to judgment as a matter of law on the issue of Plaintiffs' eligibility for HSP. *See Radaszewski I*, 383 F.3d at 614-15 (holding that the district court erred in granting summary judgment in favor of the defendant because the plaintiff's complaint permitted the inference that he was entitled to home placement). Plaintiffs' allegations and their prior qualification for the MF/TD waiver lead the Court to believe that Plaintiffs are likely to be able to prove that home-based treatment is cost-neutral and thus that they meet the eligibility requirements for HSP and are qualified individuals with disabilities for the purposes of the ADA and the Rehabilitation Act. *See id.* at 613. Accordingly, the Court will not grant Defendant's motion for summary judgment on this issue.

Neither have Plaintiffs established that they are entitled to a finding that they are eligible for HSP. The fact that "every District Court in the State of Illinois" has found similarly-situated individuals to be qualified does not excuse Plaintiffs from alleging the specific facts necessary to prove their case and supporting those facts with record evidence. The case before the Court is procedurally distinguishable from the four cases Plaintiffs cite in support of their allegation that they are qualified individuals with disabilities under the ADA. In *Radaszewski I*, the Seventh Circuit stated that the plaintiff's assertion of cost-neutrality was plausible, particularly because he

18

had met a similar cost-neutrality requirement for the MF/TD waiver prior to turning twenty-one. 383 F.3d at 613. There, however, as in *Grooms* and *Sidell*, the court was addressing only the defendant's motion for summary judgment. The court therefore found that the plaintiffs plausibly *could* prove cost-neutrality, not that they had. *Id.*; *see also Grooms*, 563 F. Supp. 2d at 863-64 (denying defendant's motion for summary judgment and seeking further briefing on issues of relative costs); *Sidell*, 2007 WL 5396285, at *9 (same). In *Radaszewski II*, the district court made a finding of fact on remand that plaintiffs were eligible to receive services through HSP after a bench trial where, presumably, the relative costs of care were entered into evidence. 2008 WL 2097382, at *14.

As Plaintiffs note, a party arguing for summary judgment "may not rest upon the mere allegations or denials of his pleading but, instead, must set forth specific facts" that leave no possibility that a jury could find for the non-movant. (R. 176, Pls.' Mem. at 5) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Parties must also provide analysis to support their arguments; bare facts and legal standards are insufficient. *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000). Thus, because Plaintiffs have failed to definitively establish that they are qualified individuals with disabilities entitled to bring this suit under the ADA, the Court must also deny Plaintiffs' motion for summary judgment on this issue. *See Harley-Davidson*, 319 F.3d at 992 (denying summary judgment when the facts were undisputed because "the reasonable inferences arising from those facts [were] disputed and create[d] genuine issues of material fact").

## II.    Whether Defendant discriminated against Plaintiffs on the basis of disability

Assuming, *arguendo*, that Plaintiffs are qualified individuals with disabilities, the Court must next determine whether Defendant violated the ADA and the Rehabilitation Act by discriminating against Plaintiffs on the basis of their disabilities. Plaintiffs argue that Defendant's arbitrary reduction of services forces them into "segregated institutions," which constitutes discrimination in violation of the ADA and the Rehabilitation Act. (R. 176, Pls.' Mem. at 5-6.) Defendant argues that she did not discriminate against Plaintiffs on the basis of disability because the neutral application of a neutral rule, the EPSDT age limit, disqualifies Plaintiffs from receiving the services they seek. (R. 193, Def.'s Resp. to Pls.' Mem. at 12.)

## A.  Integration mandate

The ADA was enacted to prevent discrimination against individuals with disabilities, including isolation and segregation of those individuals. *Olmstead*, 527 U.S. at 588-89, 599-603 (quoting and discussing 42 U.S.C. §§ 12101(a)(2), (3), (5)). To that end, the regulations promulgated pursuant to the ADA and the Rehabilitation Act include "integration mandates." Specifically, the Rehabilitation Act's regulations require public entities to "administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d). The ADA's corresponding regulation, 28 C.F.R. § 35.130(d), was modeled after and is virtually identical to the Rehabilitation Act's regulation. *Olmstead*, 527 U.S. at 592. Because the integration mandates of the ADA and the Rehabilitation Act are so similar, this Court will "construe and apply them in a consistent manner." *Radaszewski I*, 383 F.3d at 607 (7th Cir. 2004).

In *Olmstead*, the Supreme Court found that institutionalization severely diminishes an

individual's ability to participate in everyday life activities, and thus "unjustified institutional

isolation" of a disabled individual receiving medical care from a state constitutes actionable

discrimination under the ADA. *Id.* at 597-603. "[A] State may violate Title II when it refuses to

provide an existing benefit to a disabled person that would enable that individual to live in a

more community-integrated setting." *Radaszewski I*, 383 F.3d at 609; *see also Fisher v. Okla.*

*Health Care Auth.*, 335 F.3d 1175, 1182-84 (10th Cir. 2003); *Townsend v. Quasim*, 328 F.3d

511, 516-20 (9th Cir. 2003). A state is obligated to provide community-based treatment for

individuals with disabilities if three conditions are satisified: (1) the state's treatment

professionals find that community-based treatment is appropriate; (2) the affected individuals do

not oppose community-based treatment; and (3) community-based treatment can be reasonably

accommodated, taking into account the state's resources and the needs of others with similar

disabilities. *Olmstead*, 527 U.S. at 607; *Radaszewski I*, 383 F.3d at 608.

Defendant argues that in *Olmstead*, the Supreme Court ruled that states must mete out the

services they offer equitably, not that states must provide additional services. (R. 193, Def.'s

Resp. to Pls.' Mem. at 14-15) (citing *Olmstead*, 527 U.S. at 597, 603 n.14, 605). Defendant also

argues that the integration mandates do not impose any additional affirmative obligations. (R.

193, Def.'s Resp. to Pls.' Mem. at 15) ("Regulations creating rights independent of any federal

statute are not enforceable laws.") (citing *Mungiovi v. Chi. Hous. Auth.*, 98 F.3d 982, 983-84 (7th

Cir. 1996)). Defendant's arguments run counter to the holdings in *Olmstead* and *Radaszewski I*,

which instruct that the integration mandate within the implementing regulations of the ADA

creates a private right of action for disabled individuals who are institutionalized instead of

integrated into community-based treatment plans. In *Olmstead*, the Supreme Court explicitly

held that "the proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions" as long as "the State's treatment professionals have determined that community placement is appropriate, the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." 527 U.S. at 587-88. In *Radaszewski I*, the Seventh Circuit extended that analysis to apply equally to individuals with physical disabilities. 383 F.3d at 608; *see also Fisher*, 335 F.3d at 1181 (finding that *Olmstead*'s holding involving patients seeking to be removed from institutions applies equally to individuals seeking to avoid institutionalization).

Defendant attempts to distinguish *Radaszewski I*, arguing that "[t]he claims asserted [there] were claims for a reasonable modification for an individual and are not similar to the claims asserted here on behalf of the Plaintiff class." (R. 193, Def.'s Resp. to Pls.' Mem. at 16.) Defendant then criticizes *Radaszewski I* and provides myriad reasons why the Court should not follow Seventh Circuit precedent. (*Id.* at 16-17.) The Court finds neither of these approaches persuasive. The claims asserted in *Radaszewski I* were virtually identical to the claims asserted here, except that they were on behalf of a single individual. Thus, the Seventh Circuit's analysis in *Radaszewski I* guide the Court's decision here. The Court declines to entertain Defendant's implications that *Radaszewski I* was wrongly decided or that the Seventh Circuit overreached in making that decision. (*Id.*)

The parties agree that the state's treatment professionals determined that community-based treatment was appropriate prior to Plaintiffs' twenty-first birthdays. (Pls.' Facts ¶ 34;

Def.'s Resp. to Facts at 20-21.) The parties also agree that Plaintiffs' medical conditions did not

improve when they turned twenty-one.[3] Based on these two facts, the Court finds it undisputed

that community-based treatment is appropriate for Plaintiffs. *See Radaszewski I*, 383 F.3d at 608

("There is little doubt that [the plaintiff] *can* be cared for appropriately at home; he has been

receiving care at home since 1994."). Additionally, the parties agree that Plaintiffs do not

oppose, and in fact seek, community-based treatment. (Pls.' Facts ¶¶ 25-29.) Thus, the question

that remains for the Court is whether community-based treatment can be reasonably

accommodated, taking into account the state's resources and the needs of others with similar

disabilities. If the answer is yes, Defendant is obligated to provide community-based treatment

for Plaintiffs, and failure to do so constitutes a violation of the ADA and the Rehabilitation Act.

*Olmstead*, 527 U.S. at 607; *Radaszewski I*, 383 F.3d at 608.

## B.    Reasonable accommodation

Because community-based treatment is appropriate for Plaintiffs if they are qualified

individuals with disabilities, the Court must decide whether the State can reasonably

accommodate their request for community-based treatment. *Grooms*, 563 F. Supp. 2d at 855. In

order for Plaintiffs to obtain the relief they seek, Defendant could amend the MF/TD waiver to

---

[3] Plaintiffs' statement of fact ¶ 34 is: "The Plaintiffs [*sic*] medical condition[s] did not improve when they turned 21 years of age and the Plaintiffs still require a hospital level of care." (Pls.' Facts.) Defendant disputes this fact and asserts that "Plaintiffs' physicians state that they need a skilled nursing level of care." (Def.'s Resp. to Pls.' Facts ¶ 34.) The Court interprets Defendant's response to dispute Plaintiffs' contention that they "still require a hospital level of care," but not their contention that their "medical condition[s] did not improve when they turned 21 years of age." Additionally, the evidence both parties rely on for these assertions clearly states that Plaintiffs' medical conditions did not improve when they turned twenty-one. Thus, the Court considers it undisputed that Plaintiffs' medical conditions did not improve when they turned twenty-one.

provide services past the age of twenty-one or amend the PWD waiver to provide a hospital level of care. (R. 176, Pls.' Mem. at 12-15); *Radaszewski I*, 383 F.3d at 609. Defendant argues that neither of these are reasonable modifications. (R. 193, Def.'s Resp. to Pls.' Mem. at 4, 10.)

*Olmstead* does not require states to create new services, but rather requires them to "adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." 527 U.S. at 603 n.14. Illinois does in fact provide private-duty nursing through the HSP program. (Pls.' Facts ¶¶ 106, 107; Def.'s Resp. to Pls.' Facts at 57-58.) In *Radaszewski I*, the Seventh Circuit held that private duty nursing is a service that Illinois provides independently of the MF/TD waiver. 383 F.3d at 612. The Seventh Circuit concluded that the plaintiff was not seeking a new service, just a modification of the existing nursing services provided, and that this modification could be achieved either by an increased age limit for participation in the MF/TD waiver or an increased Exceptional Care Rate in the HSP waiver. *Id.* at 609-10; *see also Townsend*, 328 F.3d at 517; *Fisher*, 335 F.3d at 1183. "[T]he fact that the State already provides for some private-duty nursing tends to belie the notion that providing such care to [the plaintiff] so that he may remain at home would require the State to alter the substance of its Medicaid programs by creating an entirely 'new' service." *Radaszewski I*, 383 F.3d at 612. The modification Plaintiffs seek is not the creation of a new program or service; they just seek *more* of the same service they are already entitled to and provided.

Determining whether the requested accommodation is reasonable "requires the court to ask (1) whether a nursing home facility can meet [Plaintiffs'] needs and (2) what level of care [Plaintiffs] would require in an institutional facility." *Grooms*, 563 F. Supp. 2d at 855 (citing *Radaszewski I*, 383 F.3d at 610). The Court must then determine the cost of institutionalization

in the proper facility and whether instead providing home care imposes a reasonable expense upon the state. *Id.* As discussed above, there is no genuine dispute that Plaintiffs' needs cannot be met in a nursing home facility. Thus, the only questions are as to the level of care Plaintiffs would receive if they were institutionalized and the relative costs of providing that level of care at home instead of in an institution. Plaintiffs broadly and repeatedly assert that their only alternative to receiving a hospital-level of care at home is hospitalization. This is undisputed, but neither party provides any evidence as to what kind of hospital Plaintiffs would be placed in, what level of care they would receive, what services they would be entitled to during their hospitalizations, or the probable durations of their hospital stays. *See id.* at 863-64 (listing these questions, among others, as issues that "were identified by the Seventh Circuit as critical to any final decision in this case") (citing *Radaszewski I*, 383 F.3d at 610, 613-14). Additionally, as discussed above, the facts before the Court create a relevant factual issue as to whether community-based treatment is cost-neutral when the Plaintiffs are subject to general hospital stays rather than pediatric hospital stays. Accordingly, the Court is unable to determine whether the relief Plaintiffs seek is a reasonable accommodation.

### C. Fundamental alteration

Defendant argues not only that the requested accommodation is unreasonable, but that it would constitute a fundamental alteration in the nature of Illinois' Medicaid program. (R. 193, Def.'s Resp. to Pls.' Mem. at 8.) The ADA's regulations instruct that public entities are to make reasonable modifications necessary to comply with the ADA, "unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also Radaszewski I*, 383 F.3d at 611

(holding that Title II of the ADA "may well require the State to make reasonable modifications to the form of existing services in order to adapt them to community-integrated settings," but that "a State is not obliged to create entirely new services" or fundamentally alter the substance of the services it provides). Defendant argues that the modifications Plaintiffs seek—waiving the age limit, requiring Defendant to cover private duty nursing beyond Plaintiffs' twenty-first birthdays, or requiring Defendant to provide Plaintiffs with funding at the same level they received as children—would fundamentally alter the structure of Illinois' Medicaid Plan by compelling the State to cover optional Medicaid services. (R. 193, Def.'s Resp. to Pls.' Mem. at 8-9.) Plaintiffs argue that Defendant can amend the Medicaid waiver because "the ADA trumps Medicaid and if the existing Medicaid program in Illinois places the Plaintiffs at risk of institutionalization, then the Defendant is required [to] modify or amend[ ] its program as required by *Olmstead* and *Radaszewski [I]*." (R. 197, Pls.' Reply to Def.'s Resp. at 14-15.)

The fundamental alteration defense allows a state to avoid making modifications to accommodate disabled individuals if it can "show that adapting existing institution-based services to a community-based setting would impose unreasonable burdens or fundamentally alter the nature of its programs or services." *Radaszewski I*, 383 F.3d at 611. Courts of Appeals have interpreted the fundamental alteration defense narrowly and have applied it only when a state has already implemented a plan to bring it into compliance with the ADA. *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare*, 402 F.3d 374, 380-81 (3d Cir. 2005) ("[T]he only sensible reading of the integration mandate consistent with the Court's *Olmstead* opinion allows for a fundamental alteration defense only if the accused agency has developed and implemented a plan to come into compliance with the ADA and [Rehabilitation Act]."); *Frederick L. v. Dep't of*

*Pub. Welfare of Pa.*, 422 F.3d 151, 157 (3d Cir. 2005) (interpreting *Olmstead* "to mean that a comprehensive working plan is a necessary component of a successful 'fundamental alteration' defense" and holding that the Commonwealth of Pennsylvania could "not avail itself of the 'fundamental alteration' defense to relieve its obligation to deinstitutionalize eligible patients without establishing a plan that adequately demonstrate[d] a reasonably specific and measurable commitment to deinstitutionalization for which [the Commonwealth could] be held accountable."); *Arc of Wash. State Inc. v. Braddock*, 427 F.3d 615, 621-22 (9th Cir. 2005) (allowing the State of Washington to claim the fundamental alteration defense because it had "a comprehensive, effectively working plan," and demonstrated "that its commitment to deinstitutionalization [wa]s genuine, comprehensive and reasonable") (internal citations and quotation marks omitted); *see also Townsend*, 328 F.3d at 519 ("[P]olicy choices that isolate the disabled cannot be upheld solely because offering integrated services would change the segregated way in which existing services are provided. . . . *Olmstead* did not regard the transfer of services to a community setting, without more, as a *fundamental* alteration."); *Fisher*, 335 F.3d at 1182 ("[T]he mere fact that a program is optional does not support a fundamental-alteration defense; rather, it merely begs the question whether provision of that service would constitute a fundamental alteration.").

Here, Defendant has presented no comprehensive plan to come into compliance with the ADA that would be disrupted by Plaintiffs' proposed modifications or any substantive reason to find that the relief Plaintiffs seek constitutes a fundamental alteration. The reasons Defendant gives for why the Court should view Plaintiffs' requested relief as a fundamental alteration are abstract: that the ADA does "not evidence Congress' intent to impose massive funding

27

obligations on States that Congress itself has chosen not to fund," and that requiring the State to "alter the benefits under its Medicaid program simply to meet the reality that disabled persons have greater medical needs . . . would be to find that the Rehabilitation Act requires that States view certain medical conditions as more important than others and more worthy of cure through government subsidization." (R. 193, Def.'s Resp. to Pls.' Mem. at 9.) Neither of these allegations explain why Plaintiffs' requested relief would constitute a fundamental alteration of Illinois' current Medicaid program.

Additionally, Defendant argues that if the Court grants the relief Plaintiffs seek, it "would impose massive funding obligations on Defendant that Congress declines to fund because of the EPSDT age limitation." (R. 193, Def.'s Resp. to Pls.' Mem. at 10-11.) Defendant does not support this allegation with any evidence about the costs Illinois would face and only provides vague speculations. (*Id.*) Mere speculation is not sufficient to sustain a motion for summary judgment. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999). Even if Defendant had provided a concrete analysis of the costs involved, "budgetary constraints alone are insufficient to establish a fundamental alteration defense." *Pa. Prot. & Advocacy*, 402 F.3d at 380; *see also Radaszewski I*, 383 F.3d at 614 (explaining that the fact that plaintiff's modifications would require a state to "substantially increase" its expenditures is not sufficient to defeat his Title II claim); *Townsend*, 328 F.3d at 520 (explaining that budgetary considerations are insufficient to establish a fundamental alteration defense and focusing on "whether [the asserted] extra costs would, in fact, compel cutbacks in services to other recipients"); *Fisher*, 335 F.3d at 1182-83 ("the fact that [a state] has a fiscal problem, by itself, does not lead to an automatic conclusion that [the provision of integrated treatment] will result in a fundamental alteration").

In sum, a state cannot avoid correcting an ADA violation "simply by replying that compliance would be too costly or would otherwise fundamentally alter its noncomplying programs. *Any* program that runs afoul of the integration mandate would be fundamentally altered if brought into compliance. Read this broadly, the fundamental alteration defense would swallow the integration mandate whole." *Pa. Prot. & Advocacy*, 402 F.3d at 380-81. Defendant has not alleged sufficient facts to establish that Plaintiffs seek a fundamental alteration of the Illinois Medicaid Plan, and the Court will not grant Defendant's motion based on this defense.

## CONCLUSION

Because several issues of material fact remain, summary judgment is inappropriate at this time. Accordingly, Plaintiffs' Motion for Summary Judgment (R. 171) is DENIED and Defendant's Motion for Summary Judgment (R. 191) is DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. A status hearing will be held on February 5, 2013 at 9:45 a.m. to set a firm trial date. Given the limited, but important, factual issues that remain to be determined, it is the Court's hope that this delayed lawsuit can be resolved in the near future.

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: January 8, 2013**