

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WILLIAM R. HAMPE, by and through his
mother / guardian Jill Hampe, **RICHARD L.**
**WINFREY, III,** and **ADAM CALE, OLIVIA**
**WELTER** by and through her parents/guardians
John Welter and Tamara Welter, **PHILLIP**
**BARON,** by and through his mother/guardian
Barbara Baron, **JESSICA L. LYTLE,** by and
through her mother/guardian Judith A. Lytle,
**JACOB STRACKA,** by and through his parents/
guardians, David Stracka and Nicole Stracka,
and **CHARLES STOUT**, individually and on
behalf of a class,

            Plaintiffs,

      vs.

**JULIE HAMOS,** in her official capacity
as Director of the Illinois Department of
Healthcare and Family Services,

            Defendant.

No. 10 C 3121

Judge Ruben Castillo

Magistrate Judge Arlander Keys

## CONSENT DECREE

1.     Plaintiffs William R. Hampe, by and through his mother/guardian Jill Hampe,

Richard L. Winfrey, III, Adam Cale, Olivia Welter, by and through her parents/guardians John

Welter and Tamara Welter, Phillip Baron, by and through his mother/guardian Barbara Baron,

Jessica Lytle, by and through her mother/guardian Judith A. Lytle, Jacob Stracka, by and through

his parents/guardians David Stracka and Nicole Stracka, and Charles Stout, on their own behalf

and a class of others similarly situated, and Defendant Julie Hamos, in her official capacity as

Director of the Illinois Department of Healthcare and Family Services, hereby file this Consent

Decree to resolve the claims raised in the Plaintiffs' Third Amended Complaint for Declaratory

and Injunctive Relief, alleging violations of Title II of the Americans with Disabilities Act (42

U.S.C. § 12132, 28 C.F.R. § 35.130), Section 504 of the Rehabilitation Act (29 U.S.C. § 794(a), 28.C.F.R. § 41.51), and 42 U.S.C. § 1983.

2.     The Plaintiffs are individuals with disabilities who, at the time this action was initiated, were eligible for Medicaid under Title XIX of the Social Security Act pursuant to a federally-approved Home and Community Based Services Waiver for Medically Fragile and Technology Dependent Children (MF/TD Waiver) for children under 21 years of age, and who, upon attaining 21 years of age, were no longer eligible for the MF/TD Waiver and were allegedly subjected to reduced Medicaid funding.

3.     The Defendant is the Director of the Illinois Department of Healthcare and Family Services, which is the agency responsible for overseeing and implementing Illinois' Medical Assistance or Medicaid program pursuant to 42 U.S.C. § 1396(a)(5).

4.     The Plaintiffs allege, *inter alia*, that when individuals attain 21 years of age, they age out of the MF/TD Waiver and into a different waiver program that provides substantially less funding. The Plaintiffs allege that without the funding provided by the MF/TD Waiver program, they will have to be institutionalized or hospitalized to provide for their medical needs. The Plaintiffs allege that the Defendant's policy violates Title II of the Americans with Disabilities Act, 42 U.S.C. 12132, and the Rehabilitation Act, 29 U.S.C. 794.

5.     By Order dated November 22, 2010, the Court certified this case to proceed as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of "[a]ll persons who are enrolled or will be enrolled or were enrolled in the State of Illinois' Medically Fragile, Technology Dependent Medicaid Waiver Program (MF/TD) and when they obtain the age of 21 years are subjected to reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years."

6.     The Defendant denies the allegations of the Plaintiffs' Third Amended Complaint for Declaratory and Injunctive Relief and further denies any violations of statutes or regulations. The Defendant makes no admission of liability, and nothing herein shall be deemed an admission of fault of any kind by Defendant.

7.     The parties have stated their desire to resolve this matter amicably and without going to trial.

8.     The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1345.

9.     The parties agree that the issue in this case is limited to individuals who age out of the MF/TD waiver program upon attaining 21 years of age and are no longer eligible for the MF/TD waiver program.   The parties further agree that the MF/TD Waiver program and eligibility for the MF/TD waiver program for those who have not yet attained the age of 21 years is not the subject of this litigation and that any actions taken by Defendant with respect to the MF/TD waiver program and eligibility for the MF/TD waiver program are not material to this action.   Nothing in this Consent Decree is intended to prevent or direct any changes to the MF/TD Waiver program for persons prior to the date they attain the age of 21 years.

10.     This Consent Decree shall not override or supersede any requirements or restrictions established by Title XIX, federal law, federal regulation, state law, state regulation, or the federal Centers for Medicare and Medicaid Services (CMS), including the extent to which any procedure and/or covered service available under this Consent Decree may require or be subject to federal approval by federal CMS in accordance with Title XIX. Any service covered pursuant to this Consent Decree must be eligible for Federal Financial Participation. The terms of this Consent Decree shall not require the Defendant to cover or fund any services that the

3

individual did not receive, or for which the individual was not eligible, prior to attaining 21 years of age. The terms of this Consent Decree shall not require the Defendant to cover Class Members under any specific program, including but not limited to the Home Services Program as it exists at the time this Consent Decree is entered, or federal financing mechanism. Defendant shall have the flexibility to work with the federal government to determine the most appropriate financing mechanism.

11.     HFS may establish eligibility and/or resource allocation requirements, standards and limitations. HFS will utilize a standardized assessment tool(s) that objectively determines medical necessity, level of services, and resource allocation requirements, standards or limitations for class members.  HFS will utilize a person-centered approach.

12.     A class member's need, level and amount of medical services will be based upon medical necessity, not the chronological age of the class member.    The tool will allocate resources based on medical need and allow the class member the option to choose federally approved services including but not limited to licensed nursing and/or personal attendant services.

13.     Service plans and assessments will be based upon the individual's support system in addition to the medical needs.  The service plans will address the numbers and levels of service hours—including back-up plans, emergency plans, and training of caregivers.  If the medical needs allow for self-direction, service plans will give participants the opportunity to choose self-directed models of care conceivably allowing more service hours.

14.     Emergency room and hospitalizations will be monitored and if there are frequent Emergency Room visits or hospitalizations, the service plan, including nursing services or care coordination, may be adjusted temporarily to attempt to reduce Emergency Room visits and

hospitalizations.

15.     Except as described in Paragraph 23, service plans will be reviewed annually and may be reviewed in interim periods if necessary to address changes in needs, stability, risk factors, or other circumstances found through case management.

16.     Any changes in medical services and service plans will be discussed with the individual and family prior to implementation.

17.     Since services will be based on medical necessity, where indicated through assessment, service will be gradually reduced through titration.  In these instances, individuals will be closely monitored to assure their medical needs are not compromised.

18.     Medical case management will be available beyond age 21 for continuity of care upon transition from children to adult services.

19.     The level of case management will be determined by an HFS approved assessment and will be reviewed on an ongoing basis.  Higher levels of case management will provide support for families, with more assistance to families with greater needs, linkage to services, and availability for trouble shooting and problem solving.  Higher levels of case management will also include promptly identifying and acting on changes in medical conditions to determine the need for any temporary increase in hours.

20.     Any changes in case management will be discussed with the individual and family prior to implementation.

21.     HFS, or any successor agency, may make medical necessity, or resource determinations, and/or establish utilization control procedures through the use of Quality Improvement Organizations.  HFS shall retain the authority to establish eligibility criteria, medical necessity criteria and cost sharing as permitted by Title XIX and, where applicable,

5

approved by federal CMS. HFS may require class members to enroll with a managed care entity or other form of care coordination entity for any or all care coordination, case management and/or services delivered and nothing in this Consent Decree shall prohibit the Defendant, HFS or any successor agency from using care coordination entities or managed care entities as authorized under Title XIX.

22. Upon entry of the Consent Decree, any Temporary Restraining Order (TRO) or Preliminary Injunction shall be dissolved by the Court. In the time frame described in paragraph 23, HFS shall review the level of services identified in any TRO or Preliminary Injunction through the completion of an assessment and establishment of a new service plan via the level of care tool described herein. HFS will agree to maintain the level of services identified in any TRO or Preliminary Injunction until the completion of an assessment and establishment of a new service plan.

23. Class members will be initially assessed as follows:

    a. at 6 months prior to turning 21 years of age;

    b. within 120 days from the date of the Consent Decree for any class members with a TRO or preliminary injunction in place;

    c. within 120 days of a request for individuals who were served under the MF/TD Waiver and who have turned 21 years old and who do not have a TRO in place.

24. Class members who are dissatisfied with any service planning issue shall have the right to appeal under the administrative processes set forth at 89 Ill. Admin. Code Sections 104.1 – 104.80.

25. Nothing in this Consent Decree shall operate to limit any individual's freedom of

choice as required by Title XIX of the Social Security Act and, to the extent any class member chooses to participate in any other home and community-based services program, which may be operated pursuant to a federal Title XIX waiver, the terms of this Consent Decree shall not apply and shall not require the alteration or modification of the program chosen by the individual.

26.     This Consent Decree is based on existing State and Federal law.  If either party believes a change in State or Federal law impacts the terms of the Decree, it shall notify the other party and attempt to negotiate a resolution.  If negotiation is unsuccessful, after 45 days, the issue may be presented to the Court for resolution.  Until such time as there is a negotiated or court-imposed resolution, both parties will continue to abide by the terms of the Consent Decree.

27.     This Consent Decree shall be in effect for three years from the date of entry.  The Court shall retain jurisdiction to enforce the terms of the Consent Decree during its duration, after which time the case shall be dismissed with prejudice.

28.     Defendant shall provide to Plaintiffs' counsel, upon a reasonable request and within a reasonable time frame, identifying information as to the Class Members.    All information provided to the Plaintiffs' counsel shall be considered confidential in accordance with the terms of the Agreed Protective Order, entered in this case on September 27, 2010 (Civil Docket Document No. 53), which shall continue apply to any such disclosure of confidential information to the Plaintiff's counsel.

29.     Within 90 days of the date of entry of this Consent Decree, the Defendant shall pay to Plaintiffs' counsel the sum of $525,000 (Five Hundred Twenty-Five Thousand Dollars), in settlement of all claims by Plaintiffs or their attorneys for attorneys' fees and litigation costs.

So Ordered this 3rd day of October.

_____
United States District Judge

[SIGNATURE PAGE FOLLOWS]

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Hampe v.*

*Hamos*, Case No. 10-3121, pending in the United States District Court for the Northern District

of Illinois, Eastern Division.

FOR THE PLAINTIFF CLASS:

Date: 6/19/13

FOR CLASS COUNSEL:

Date: 6/19/2013

FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:

Date: _____

AS ATTORNEY FOR DEFENDANT:

Date: _____

9

EACH UNDERSIGNED PARTY enters into this Consent Decree in the matter of *Hampe v.*

*Hamos*, Case No. 10-3121, pending in the United States District Court for the Northern District

of Illinois, Eastern Division.

**FOR THE PLAINTIFF CLASS:**

Date: _____        _____

**FOR CLASS COUNSEL:**

Date: _____        _____

**FOR DEFENDANT, DIRECTOR OF
ILLINOIS DEPARTMENT OF
HEALTHCARE AND FAMILY
SERVICES:**

Date: ___6/12/13___        _Julie Hamn_

**AS ATTORNEY FOR DEFENDANT:**

Date: _June 26, 2013_        _Karen Konieczny_

9