1    IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3
     WILLIAM R. HAMPE, et al.,           )
4                                        )
                     Plaintiffs,         )
5    -vs-                                )    Case No. 10 C 3121
                                         )
6    JULIE HAMOS, in her official        )    Chicago, Illinois
     capacity as Director of the         )    August 26, 2015
7    Illinois Department of              )    10:03 a.m.
     Healthcare and Family               )
8    Services,                           )
                     Defendant.          )
9

10              TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE CHIEF JUDGE RUBEN CASTILLO
11
     APPEARANCES:
12
     For the Plaintiffs:    MR. ROBERT HUGH FARLEY, JR.
13                          Robert H. Farley, Jr., Ltd.
                            1155 South Washington
14                          Naperville, IL  60540
                            (630) 369-0103
15                          E-mail:  Farleylaw@aol.com

16   For the Defendant:     MR. JOHN E. HUSTON
                            Illinois Attorney General's Office
17                          160 North LaSalle Street
                            Suite N-1000
18                          Chicago, IL  60601
                            (312) 793-2380
19                          E-mail:  John.Huston@illinois.gov

20

21   Court Reporter:

22           KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                    Official Court Reporter
23               United States District Court
          219 South Dearborn Street, Suite 2524-A
24               Chicago, Illinois  60604
                 Telephone:  (312) 435-5569
25          Kathleen_Fennell@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2        THE CLERK:  10 CV 3121, Hampe, et al., versus Hamos.

3        THE COURT:  Good morning, Mr. Farley.

4        MR. FARLEY:  Good morning, your Honor.  Robert Farley

10:03:56  5  on behalf of the plaintiffs and class.

6        MR. HUSTON:  Good morning, your Honor.  John Huston,

7    Senior Assistant Illinois Attorney General, on behalf of the

8    defendant Norwood.

9        THE COURT:  Okay.  So, Mr. Huston, what are your

10:04:06  10  feelings about this motion?

11        MR. HUSTON:  Well, this motion is not properly before

12    the Court.  This is a rule to show cause based on an alleged

13    breach of the consent decree as to a named class member.

14        THE COURT:  Okay.

10:04:19  15        MR. HUSTON:  Okay.  The consent decree deals with the

16    provision of services, continued provision of services under

17    the MF/TD waiver, which is the Medically Fragile/Technology

18    Dependent children's waiver.

19        THE COURT:  Okay.

10:04:37  20        MR. HUSTON:  The decree continues those services to

21    individuals past the age of 21 instead of going over the cliff

22    when they reach the age of 21 and then have no further

23    connection with the program under the law.  We continued the

24    program pursuant to the consent decree.

10:04:57  25        Mr. Stout is not in the MF/TD program.  Mr. Stout

1    chose services under a different federal waiver, the Home

2    Services Program waiver, run by the Illinois Department of

3    Human Services.

4            THE COURT:  So you're saying he's not a class member?

10:05:16    5            MR. HUSTON:  Well, he is a class member, but he has

6    chosen to receive services from a different waiver, and under

7    the terms of the consent decree at Paragraph 25, he has the

8    freedom of choice to seek services from any other

9    home-and-community-based-services waiver, but the terms of

10:05:36   10   this consent decree are not binding on that other waiver.

11           So to the extent that Mr. Stout has a complaint about

12   services he's receiving under the Home Services Program

13   waiver, which he elected to go into, as counsel's motion --

14           THE COURT:  Okay.

10:05:57   15           MR. HUSTON:  -- sets forth that he has had dealings

16   with DHS and he had 17 hours of personal assistant time, this

17   motion for rule to show cause on this consent decree is not

18   proper -- is not a proper use of the Court's contempt power

19   for -- for someone who is seeking services outside of the

10:06:22   20   consent decree.

21           THE COURT:  Okay.  Mr. Farley?

22           MR. FARLEY:  Judge, the MF/TD waiver ends when

23   persons turn 21.  When this case was settled, Mr. Stout, who

24   was a plaintiff, also class member, was past the age of 21.

10:06:39   25   He was not entitled to any services under that program.  He

1  was entitled to protection under this consent decree.

2         THE COURT:  He is specifically listed as one of the

3  class members in the consent decree --

4         MR. FARLEY:  Right.

10:06:55  5         THE COURT:  -- right?

6         MR. FARLEY:  Then to make --

7         THE COURT:  So you say --

8         MR. FARLEY:  Jump ahead, Judge.

9         THE COURT:  Yes.  You say he's not covered by

10:07:03  10  Paragraph 25, right?

11         MR. FARLEY:  He is covered.

12         THE COURT:  He is covered.

13         MR. FARLEY:  He is a class member.  He's entitled to

14  relief under this.

10:07:10  15         THE COURT:  Okay.  But the exemption in Paragraph 25

16  is if you voluntarily choose some other community-based

17  service program.

18         MR. FARLEY:  We asked for specific relief under here,

19  that the services.  The reason this case was filed because the

10:07:27  20  services under the DRS program was limited and didn't provide

21  the medically necessary.  We asked specifically, I

22  communicated no less than six times with Mr. Huston who would

23  then forward it on to his client.

24         Two days ago, the state did give 24/7 personal

10:07:46  25  attendant care for my client --

1       THE COURT:  Okay.

2       MR. FARLEY:  -- after a couple e-mails where we

3  indicated we were going to have to file a petition for a rule.

4       THE COURT:  Okay.

10:07:55   5       MR. FARLEY:  We filed the petition for a rule.  Two

6  days before, they give us the relief which we want, which was

7  wonderful.

8       THE COURT:  Okay.

9       MR. FARLEY:  I told Mr. Huston that the matter wasn't

10:08:06   10  over, that we were going to seek reasonable fees for enforcing

11  the terms of the consent decree.

12       THE COURT:  Okay.

13       MR. FARLEY:  To cut to the chase, I have nine hours

14  in this case.  My hourly rate is $650.  I'm only asking

10:08:20   15  compensation for four hours at 650 for 2,600, and I'm gone.

16       I also told Mr. Huston yesterday that had his client

17  granted the relief prior to me having to file a petition, I

18  wouldn't have gone in for any fees or anything.  I want my

19  class members and clients to get what they're entitled to, but

10:08:38   20  they shouldn't be horsed around.

21       We have quotes that say from the state, oh, yes,

22  Mr. -- you know, we hope things go well for you, or we don't

23  have the authority to give you any more.  This is up to the

24  governor's office or HFS.

10:08:51   25       THE COURT:  Okay.

1          MR. FARLEY:  So I'm asking, we can resolve the

2    matter, pay me four hours at 650, 2,600, I'm done, we don't

3    have to file a petition for fees, we don't have to do any

4    further briefing.

10:09:02   5          THE COURT:  Okay.  What assurance do you have that

6    these services will continue for Mr. Stout?

7          MR. FARLEY:  They --

8          THE COURT:  In other words --

9          MR. FARLEY:  They submitted a written document

10:09:15  10   setting forth a plan.  Obviously, it's -- always can be

11   reassessed once a year based upon his condition.

12         THE COURT:  Okay.

13         MR. FARLEY:  My experience has been once the state

14   and I have tangled and my clients have gotten what they're

10:09:28  15   entitled to, there's a tendency to leave them alone.

16         THE COURT:  Okay.  Mr. Huston?

17         MR. HUSTON:  Mr. Stout has a written service plan

18   under the Home Services Program that he's apparently signed,

19   so it's not -- he's under a different program.  These are

10:09:44  20   different -- Mr. Farley keeps talking about the state, the

21   state.

22         These are programs that are run and administered by

23   different state agencies.  The HSP program is administered and

24   run by the Department of Human Services.  It's got a separate

10:10:01  25   secretary.  It's a separate division of the State of Illinois.

1          The MF/TD waiver is run by Director Norwood of HFS.

2    They are not getting services pursuant to the MF/TD waiver.

3    They are getting services pursuant to the HSP waiver run by

4    DHS.  As Mr. Stout has exercised his freedom of choice, he is

5    getting services that are not ordinarily given to people in

6    the MF/TD program.

7          THE COURT:  So is it true that these services were

8    discontinued by the State of Illinois and then just two days

9    ago were reinstated?

10          MR. HUSTON:  There were no services discontinued.

11    Mr. Stout had a change -- change in circumstance.  He was

12    receiving 17 hours a day in personal service, personal

13    assistant services.  He had someone in the home that was

14    providing time services at -- for him.

15          That individual who was -- who's alleged to be his

16    girlfriend, they broke up, and he needed additional services.

17    So he went -- he asked DHS for additional services.

18          Now, there's going to be -- if we're going to get

19    into this, there's a dispute as to whether -- you know,

20    Mr. Farley is trying to portray the state as not doing

21    anything in this case, and that is not accurate.

22          There's -- in the case notes for this case, for

23    Mr. Stout's case, there are documents, it is documented that

24    the caseworker attempted to contact Mr. Stout on numerous

25    occasions, and Mr. Stout's voicemail was filled.  They

1    couldn't reach him.

2          When they finally reached him, they started talking

3    about how best to receive these services.  So we are talking

4    about an entirely different agency, not HFS.  Under this

10:12:09    5    consent decree at Paragraph 25, he's opted out.  This consent

6    decree does not cover the services that Mr. Stout is

7    receiving, and, therefore, a rule to show cause under this

8    consent decree is improper, and there should be no fees

9    awarded.

10:12:25    10          MR. FARLEY:  Under paragraphs 2 and 4 of the consent

11    degree, it talks specifically that the waiver program ends at

12    age 21.  No class member plaintiff is eligible for MF/TD

13    services past 21 because the program ends.  The relief they

14    get is independent of the MF/TD program.  The relief they get

10:12:45    15    is because we have a consent decree which says that they're

16    entitled to medically necessary services, including nurse and

17    personal attendant care.  That's the protection we get.

18          I don't care --

19          THE COURT:  Can I see the letter you just received

10:12:57    20    two days ago saying that Mr. Stout's service would be

21    reinstated or --

22          MR. FARLEY:  It was a plan that provided the 24/7.

23    Vikki Mayfield sent an e-mail to my client on Monday, please

24    open the attached document, and under the attached document,

10:13:35    25    it was a Home Services Program service plan which provides for

1    775 hours per month --

2         (Tendered.)

3         MR. FARLEY:  -- which is more than -- 7 times 24 is,

4    like, 733, so there's a few hours built in.

10:13:55    5         So he is now getting 24/7 personal attendant care

6    which did not previously exist.  So after I spoke to Mr. Stout

7    on Monday, told him to sign it and send it back.

8         THE COURT:  And he did sign it.

9         MR. FARLEY:  Yes.  Prior to the filing of the

10:14:28    10   petition, that agency told Mr. Stout, Teri Dederer,

11   supervisor, on August 10th.  She hoped it would go well with

12   him, but it was going to be up to HFS or the governor's office

13   as to whether he would be able to receive the 24 care.

14         Caseworker on July 14th spoke to Charles Stout in the

10:14:48    15   presence of both his parents, stated that Charles deserves

16   24/7 care, but he has not been given any authority to do

17   any more.

18         So the relief we get isn't because of the MF/TD

19   program.  That ends for people at 21.  The relief Mr. Stout

10:15:04    20   gets is pursuant to this consent decree.  He's entitled to

21   nursing or personal attendants.  And now they gave him the

22   relief, which is fine.

23         So pay me.

24         THE COURT:  Paragraph 9 says, "The parties agree" --

10:15:21    25   this is Paragraph 9 of the consent decree -- "agree that the

1  issue in this case is limited to individuals who age out of

2  the MF waiver program upon obtaining 21 years of age and are

3  no longer eligible for the waiver program."

4        That would indicate to me that Mr. Stout is not in

10:15:42  5  the waiver program and that his relief is pursuant to the

6  consent decree.

7        Reading the entire consent decree, all of the

8  paragraphs holistically, I will grant the relief requested at

9  this point.

10:16:01  10       Your relief on the merits is not necessary, given

11  that Mr. Stout has been reinstated.  I will award you the

12  $2,600 you're requesting, Mr. Farley --

13            MR. FARLEY:  Thank you, your Honor.

14            THE COURT:  -- as attorney's fees.

10:16:15  15            MR. FARLEY:  Thank you.

16            MR. HUSTON:  Thank you, Judge.

17            THE COURT:  Thank you.

18        Here, that's what Mr. Farley is looking for.

19        (Tendered.)

10:16:30  20            THE COURT:  Have a good day.

21            MR. FARLEY:  Thank you.

22        (Which were all the proceedings heard.)
                          CERTIFICATE
23       I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.
24  /s/Kathleen M. Fennell              September 25, 2015
    _____    _____
25  Kathleen M. Fennell                     Date
    Official Court Reporter